IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DARRELL C. BERRY, | )   Civil Action No. 3:09-126-CMC-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

### ADMINISTRATIVE PROCEEDINGS

On August 22, 2005, Plaintiff applied for SSI and for DIB, alleging disability as of March 14, 2005. Plaintiff's applications were denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held on October 16, 2007, the ALJ issued a decision dated February 28, 2008, denying benefits. The ALJ found that Plaintiff was not disabled because under the medical-vocational guidelines (also known as the "Grids") promulgated by the Commissioner, Plaintiff remains able to perform work found in the national economy. See generally 20 C.F.R., Part 404, Subpart P, Appendix 2.

The ALJ found (Tr. 37-46):

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.  The claimant has not engaged in substantial gainful activity since March 14, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: herniated lumbar disc (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform unskilled light work. The claimant is able to sit/stand/walk six hours each in an eight-hour workday and is able to occasionally lift 20 pounds and frequently lift ten pounds. The pain would cause concentration deficits which limits the claimant to unskilled work.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on February 26, 1966 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.  The claimant has not been under a "disability," as defined in the Social Security Act, from March 14, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

On November 26, 2008, the Appeals Council denied Plaintiff's request for review, thereby making the determination of the ALJ the final decision of the Commissioner. Plaintiff filed this action on January 20, 2009.

## FACTUAL BACKGROUND

Plaintiff was thirty-nine years old as of his alleged onset date and forty-two years old at the time of the ALJ's decision. He has a twelfth grade/high school education and past relevant work as a utility company lineman and longshoreman. Plaintiff alleges disability since March 14, 2005, due to residuals of a work-related back injury.

## STANDARD OF REVIEW

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence.[1] Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[1]Substantial evidence is:

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

3

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## MEDICAL RECORD[2]

Prior to his alleged disability onset date, Plaintiff received treatment for epigastric pain. One physician advised Plaintiff not to take NSAID-type medications. See Tr. 309-312, 306-308, 313-317.

On March 16, 2005, Plaintiff was treated at the South Bay Hospital Emergency Room ("South Bay ER") in Tampa, Florida after he fell off an unsecured ladder at work and injured his back. Tr. 571-573, see Tr. 349, 352, 358, 376, 772. Dr. Robert C. Henderson, an orthopedic surgeon, noted decreased generalized pin prick sensation on March 22, 2005. Straight leg raise testing from a seated position was negative. Dr. Henderson diagnosed Plaintiff with a medial meniscus tear on the right, lumbosacral strain, and disc disease. Tr. 376-378. Plaintiff was prescribed Anaprox and Ultram at the South Bay ER on March 24, 2005. Tr. 355-357. Plaintiff returned to Dr. Henderson on March 25, 2005. He scheduled an MRI; took Plaintiff off work; and gave him prescriptions for a cane, corset, and Vicodin. Tr. 382, 805.

On April 5, 2005, Dr. Henderson noted moderate spasm in Plaintiff's back. He released Plaintiff to light duty, but noted he was waiting for MRIs of Plaintiff's knee and back. Dr. Henderson's impression was a meniscus tear in Plaintiff's right knee and lumbosacral strain. Tr. 383, 804. On April 6, 2005, Dr. Joseph Rashkin (of Bay Area Pain Management) examined Plaintiff and noted impressions of chronic intractable lower back pain secondary to herniated lumbar disc, and

---

[2]The voluminous transcript in this action includes numerous duplications of Plaintiff's medical records and many records from well before the alleged disability onset date.

sciatica of the right lower extremity. He prescribed a Medrol Dosepak, Soma, and noted that Plaintiff already had Percocet. Dr. Rashkin recommended neurosurgical and surgical consultations, and placed Plaintiff on temporary total disability until further notice. Tr. 693-695, 866-869. On the same day, Dr. Henderson noted that Plaintiff's MRIs (Tr. 320-321, 753-754) showed mild degenerative changes of the right knee and a small central disc at L4-5 with mild flattening of the thecal sac. His examination revealed that Plaintiff had some giveway weakness on the right, but straight leg raising was essentially negative. Dr. Henderson completed a Work Status Report stating that Plaintiff should stay out of work for two weeks. Tr. 379, 801-802.

After complaining to Dr. Rashkin of abdominal pain and vomiting, Plaintiff was treated at the South Bay ER on April 20, 2005. Esophagogastroduodenoscopy revealed extensive duodenal erosions. Tr. 358-366. On April 25, 2005, Dr. Henderson noted giveway weakness with dorsiflexion, and decreased sensation in Plaintiff's left foot. Plaintiff could perform left and right lateral bending to thirty degrees with no involuntary spasm. Straight leg raise testing was negative. Tr. 384. Dr. Thomas M. Newman, a neurologist, also examined Plaintiff the same day. He noted that Plaintiff had decreased range of motion in his lower back, muscle spasms, and some right leg giveaway weakness, but Plaintiff exhibited normal reflexes, full 5/5 motor strength, normal sensation, and no muscle atrophy. Tr. 392-394, 833-835. Dr. Rashkin recommended anti-anxiety medications, continuation on Soma, no other analgesic medications, neuromuscular thoracolumbar stimulation unit, and physical therapy on April 27, 2005. Tr. 696-697, 859-865.

Dr. Robert Martinez, a neurologist, examined Plaintiff on May 2, 2005. He noted that Plaintiff had an antalgic gait, thoracic tenderness and swelling, lumbar tenderness and swelling with a nodular muscle spasm, and positive straight leg raise tests bilaterally. Plaintiff's muscle tone was

normal, he had full 5/5 strength in all extremities, intact sensation, and normal and symmetrical reflexes. Dr. Martinez recommended a neurological consultation, prescribed a TENS unit and home exercise, and told Plaintiff "[n]ot to lift greater than 20 pounds from a bent position, 10 pounds repetitively." Tr. 405-408. On May 6, 2005, Dr. Newman noted that Plaintiff continued to complain of pain and swelling of his lower thoracic spine. Plaintiff's was "temporarily off work." Tr. 398.

During May and June 2005, Plaintiff underwent physical therapy at Health South in Brandon, Florida. At discharge it was noted that Plaintiff had made minimum/moderate progress; had difficulty with bending, lifting, and prolonged ambulation; and had increased functional capacity, decreased pain, increased range of motion, and decreased spasm. Tr. 421-478.

On May 10, 2005, Dr. Rashkin noted that Plaintiff's MRI (Tr. 340) showed straightening of the thoracic spine suggesting ligamentous injury or sprain, and disc bulging and disc dessication at T11-12. Plaintiff had muscle spasm between T8 and T12. Tr. 698-699, 857-858. On May 26, 2005, Dr. Rashkin noted soft tissue paraspinal swelling that appeared to be severe muscle spasm from T8 to T11. He recommended further imaging, bilateral thoracolumbar facet joint nerve block, and physical therapy. Tr. 679-680. A thoracic spine CT scan on May 27, 2005 revealed spondylitic disc bulge at T11-12 resulting in mild canal and foraminal stenosis. Tr. 346. Nerve conduction studies on June 7, 2005 reflected results consistent with technical difficulties or bilateral S1 and left L5 radiculopathy. Tr. 387. On June 21, 2005, Dr. Rashkin noted that Plaintiff tried to go back to work but reported unbearable mid and low back pain. He recommended that Plaintiff continue Skelaxin and try a thoracolumbar facet nerve block. Dr. Rashkin opined that Plaintiff should be on total temporary disability and was not able to work at the job he was working before. Tr. 700.

On June 23, 2005, Dr. Martinez noted that Plaintiff continued to complain of low back pain, but had no radicular complaints. He recommended light duty full-time work with no lifting greater than twenty pounds. Plaintiff was no longer on anti-inflammatory drugs because of his GI problems. He was noted to be wearing a back brace. Tr. 410-413. On July 8, 2005, Dr. Newman wrote that Plaintiff was walking with a cane and using a corset, but Plaintiff's degree of dysfunction was far out of proportion to any objective findings (including his neurological exam, EMG, nerve conduction studies, and MRIs) and there appeared to be "some embellishment present on the findings on exam." He opined that it was not medically necessary for Plaintiff to see a pain management specialist. Tr. 401.

On July 11, 2005, Dr. Martinez noted that he had reviewed medical records from all treating physicians. Plaintiff reported pain levels of 4-5 on a good day to 9-10 on a bad day. It appeared that Plaintiff had returned to work because he complained of difficulty at work (even though he did not have to do anything but walk up to a truck and write some numbers down) because his boots weighed a total of thirty-eight pounds. Plaintiff had an unremarkable gait with no focal motor, sensory, or reflex deficits, but had some tenderness and muscle spasm on his right lower back and positive straight leg raise testing. Dr. Martinez suggested follow up with an orthopedic or neurosurgeon, a TENS unit or chronic pain management, back exercises three times a day, medication, and walking and aqua therapy. Restrictions included no jumping or bouncing, and no lifting greater than twenty pounds from a bent position and ten pounds repetitively. Tr. 414-420.

On August 31, 2005, Plaintiff (who had moved to South Carolina from Florida) was seen at the St. James-Santee Family Health Center, Inc. Tr. 168, 170. An orthopedic referral and

medications were given. Dr. Jafer Gheraibeh, an orthopedist, examined Plaintiff and prescribed Ultracet and Flexeril on October 13, 2005. Tr. 480.

Dr. Seham El-Ibiary, a state agency physician, reviewed Plaintiff's records in December 2005.

He opined that Plaintiff was capable of lifting twenty pounds occasionally and ten pounds frequently; standing/walking about six hours and sitting about six hours in an eight-hour workday; frequently climbing ramps and stairs, balancing, kneeling, and crouching; occasionally climbing ladders, ropes, and scaffolds; and occasionally stooping and crawling Tr. 742-49.

Plaintiff was treated at the Winyah Chiropractic Clinic, from December 2005 to April 2006. Tr. 490, 494-499. On December 30, 2005, Dr. Gheraibeh observed that Plaintiff had lumbar lordosis, was not standing straight, and was not able to bend over and touch his toes. He diagnosed chronic low back pain and prescribed medications. Tr. 480-481.

Dr. Gheraibeh noted that Plaintiff was using a cane to walk; prescribed a Lidocane patch, Flexeril, Ultracet, and Keflex; and referred Plaintiff for pain management on January 20, 2006. Tr. 481. On January 30, 2006, pain medication and a muscle relaxer were prescribed at the Georgetown Memorial Hospital ER ("Georgetown ER"). Tr. 276-277. Dr. Gheraibeh noted that Plaintiff continued to have severe muscle spasm on February 24, 2006. Tr. 481.

On March 17, 2006, Dr. Gheraibeh completed a form from Plaintiff's attorney which asked whether Plaintiff met or medially equaled the criteria of the Listing[3] at § 1.04 (disorders of the spine). Dr. Gheraibeh reported that Plaintiff had a small herniated disc at L4-5 with right L4 nerve root compression, limited range of motion, motor loss (weak right ankle dorsiflexion), loss of sensation

---

[3]This refers to one of the listing of impairments under 20 C.F.R. Pt. 404, Subpt. P, App. 1.

on the inner side of Plaintiff's right leg, and weak right ankle reflexes. Tr. 175. He circled an answer on the form indicating that, even if the clinical findings did not match all of the criteria of Listing 1.04, Plaintiff's combination of impairments were medically equivalent to the severity of the conditions in Listing 1.04, but did not attach an additional page (as requested on the form) to explain his conclusion. Tr. 173-175. On April 4, 2006, Dr. Gheraibeh prescribed Soma and Ultracet for Plaintiff's back pain and instructed Plaintiff to return after an MRI was done. Tr. 482.

Plaintiff underwent a surgical consultation with Dr. Paul J. Zak, a Florida orthopedic surgeon, on April 21, 2006. Plaintiff rated his pain as ten out of ten, and reported that bending, general activity, sitting, standing, and walking made his pain worse. Plaintiff reportedly could stand with no or minimal pain for forty-five minutes and walk fifty to two hundred feet with no or minimal pain. He used a cane for ambulation. Dr. Zak diagnosed lumbar disc displacement at L4-5 and thoracic/lumbar sprain/strain with severe muscle spasm. He prescribed a muscle relaxant and recommended that Plaintiff undergo trigger point injections and a discogram. Dr. Zak wrote that Plaintiff was on temporary total disability until he could be seen by a pain management physician, but also completed work status forms (that day and on May 1, 2006) indicating Plaintiff had permanent total disability. Tr. 577-579, 639, 713.

State agency physician Dr. William Cain reviewed Plaintiff's medical records in May 2006. He opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand/walk about six hours and sit about six hours in an eight-hour workday; frequently climb ramps and stairs and balance; occasionally stoop, kneel, crouch, and crawl; occasionally climb ladders, ropes, or scaffolds; and needed to avoid concentrated exposure to hazards. Additionally, Dr. Cain observed that there was no medical necessity indicated for the use of a cane. Tr. 704-709.

During a May 12, 2006 physical, Plaintiff reported no complaints.  Tr. 168.  He was treated at Georgetown ER on June 12, 2006 for back pain and radiation to his right leg.  No neurological deficits were noted.  A lumbar spine x-ray revealed degenerative disc disease.  Tr. 279-285.

On July 25, 2006, Dr. Rashkin noted that Plaintiff complained of continued severe lower back pain.  Examination revealed swelling with trigger points and muscle spasms to the right of the midline in the L1-2 and T11-12 area.  Dr. Rashkin opined that Plaintiff could not perform any gainful employment and was permanently disabled.  He recommended bilateral lumbar facet joint nerve block/lumbar epidural nerve block.  Tr. 192-193, 176.

Plaintiff does not appear to have sought medical treatment again until March 8, 2007, at which time Dr. Rashkin wrote that Plaintiff remained on temporary total disability and opined in a separate note that Plaintiff should be on permanent total disability.  Tr. 181, 191.  Dr. Rashkin also completed a Medical Source Statement in which he opined that Plaintiff, because of chronic mid and low back pain, could lift less than ten pounds total; stand/walk for less than two hours total in an eight-hour workday; had an impairment on his ability to sit; had limited ability to push, pull, and handle; and could never reach, climb, balance, kneel, crouch, crawl, or stoop.  Tr. 177-180.  Additionally, Dr. Rashkin completed a Listing form at the request of Plaintiff's attorney.  Dr. Rashkin opined that Plaintiff had a vertebrogenic disorder with radicular pain in the buttocks, no sensory loss, and no reflex loss.   He noted that Plaintiff had pain, a history of muscle spasm, and significant limitation of motion in the spine in all movements.  Dr. Rashkin opined that even if clinical findings did not meet all of the criteria of Listing 1.04, Plaintiff's combined impairments were medically equivalent to the severity of the conditions in Listing 1.04.  Dr. Rashkin did not attach a separate page to explain his conclusion, despite instructions to do so.  Tr. 182-184.

While attending a church conference in Texas in May 2007, Plaintiff fell at a motel and sought emergency care at Baylor University. X-rays were reportedly negative. On May 15, 2007, Plaintiff sought care at Georgetown ER. He exhibited benign musculoskeletal findings including some muscle stiffness with no active tenderness, intact deep tendon reflexes, full 5/5 motor strength, and intact sensation. Tr. 226-227. MRIs of his cervical, thoracic, and lumbar spine were all essentially normal in June 2007. Tr. 230-232. Plaintiff was treated at the Georgetown Memorial Hospital for rectal bleeding from June 12 to 13, 2007. He reported taking Tylenol and Advil. The impression was acute gastrointestinal bleed likely diverticulitis in origin, chronic low back pain, acute blood loss anemia, and mild dehydration. Tr. 236-238. He was readmitted from June 19 to 21, 2007, for an acute gastrointestinal bleed and duodenal ulcer. Tr. 252-258. In July and August 2007, Plaintiff sought care at Georgetown ER for back pain. Tr. 198-212. A weakness in his right leg, decreased sensation, and an inability to elicit reflexes were noted at St James-Santee Family Health Center on August 31, 2007. An orthopedic consult was recommended and medications were prescribed. Tr. 167, 169.

Plaintiff was examined by Dr. Leonard E. Forrest, an orthopedist, on November 12, 2007. Plaintiff reported that he did not have significant symptoms as long as he stayed within a reasonable level of limitations, and had not required any treatment for his back from spring of 2006 until his additional injury in May 2007. Dr. Forrest noted that Plaintiff appeared healthy, but walked with a cane, had muscle spasms in his back, and had sciatica symptoms in his right leg. Tr. 917-919. A lumbar and thoracic MRI on December 14, 2007 revealed mild loss of disc height and some disc protrusion and herniation at L3-4 with probable entrapment of the exiting third and fourth nerve roots, and mild signal loss at T11-12 with no disc protrusion. Tr. 915-916. On December 28, 2007,

Dr. Forrest noted that Plaintiff had fallen when his right leg gave way. Back surgery was recommended. Tr. 925.

On December 31, 2007, Dr. Forrest completed a form at the request of Plaintiff's counsel in which he noted that Plaintiff had a vertebrogenic disorder lumbago, muscle spasm, and appropriate radicular distribution of significant motor loss in the right lower extremity. He opined that Plaintiff's impairments were equivalent in severity to the conditions described in Listing 1.04. Dr. Forrest noted, however, that Plaintiff did not have significant limitation of motion in the spine, had no sensory loss, and had no reflex loss. When asked to describe any muscle weakness, Dr. Forrest simply wrote that Plaintiff had pain. Tr. 913-914. EMG and Nerve Conduction Studies revealed evidence of acute radiculopathy at L3 and L4 on January 2, 2008. Tr. 924.

Approximately eight months after the ALJ's decision, Plaintiff submitted medical records to the Appeals Council, including patient status reports and other records from Dr. Thomas F. Roush (a surgeon in practice with Dr. Forrest) who began treating Plaintiff in January 2008. Tr. 943. Records indicate that Dr. Roush performed surgery on January 15, 2008, consisting of "Right L3-L4 far lateral disc excision of a herniated nucleus pulposus[;] [f]oraminotomy, right L3-L4 to decompress the right L3 nerve root [;] [f]ar lateral, extraforaminal, disc excision, right L4-L5[; and] [f]oraminotomy, right L4-L5 to decompress the right L4 nerve root[.]" Tr. 920-923.

On March 12, 2008, Dr. Roush wrote to Plaintiff's attorney, stating that Plaintiff had made considerable improvement since surgery, but because of the prolonged neural compression (a profound neurological deficit from L4-5 disc herniation), he did not think Plaintiff would ever fully recover and would always be a danger to himself and potentially to others because the weakness in the right lower extremity could cause Plaintiff to lose control and fall down. Tr. 943. On March 13,

2008, Dr. Roush completed a Medical Source Statement in which he opined that Plaintiff could lift less than ten pounds total; stand/walk for less than two hours and sit for less than six hours in an eight-hour workday; engage in limited pushing and pulling; occasionally kneel, crouch, stoop, and reach; never climb, balance, or crawl; and should have limited exposure to vibrations and hazards. Tr. 26-29, 936-939. The same day, Dr. Roush completed a Listing form at the request of Plaintiff's attorney, in which he opined that Plaintiff had a vertebrogenic disorder with limitations of motion, motor loss, muscle weakness, sensory loss, and reflex loss, all of which he stated he matched the criteria of § 1.04. Tr. 940-942.

On May 5, 2008, Dr. Roush noted that Plaintiff's right leg weakness was slightly improved. Nerve deficits and slightly diminished sensibility were noted. Tr. 10. On May 16, 2008, Plaintiff complained of a significant pain in his right leg. Dr. Roush diagnosed lumbar disc disorder and wrote that "[p]atient may not return to work due to condition." Tr. 9-10, 934-935. In a treatment note dated August 4, 2008, Dr. Roush indicated that Plaintiff had some right leg pain, but was "much improved from preoperative status" and did not need an assistive device most of the time. Dr. Roush's examination revealed slight neurologic deficits (4+/5 right quadriceps, 4/5 right anterior tibialis, 5-/5 EHL, 5-/5 right gastrosoleus, and 5-/5 right hamstring) and slightly diminished, but stable, sensation in the L3-4 dermatome. Dr. Roush opined that "[b]ecause of this and given his prior work description [Plaintiff] will not ever be able to get back to that type of heavier work. Certainly Vocational Rehabilitation [sic] to do some less strenuous activities is a reasonable way to go here if going back to work is being entertained from any party." Tr. 13, 933.[4]

---

[4]The Appeals Council discussed the additional evidence, noting that some of the materials submitted were duplicates of what had already been presented to the ALJ and other materials
(continued...)

## HEARING TESTIMONY

At the hearing, Plaintiff testified that he had constant sharp pain and "a big old knot" in his back that caused him to walk with a cane. Tr. 54. He reported that his pain worsened since 2005, and he had numbness and pain in his right leg. Plaintiff stated that he could not walk from the hearing room to the parking lot without having to stop, could sit for one hour, and had to lean forward when sitting because it hurt to sit up straight. Tr. 60-61. He testified that he could not lift, and had difficulty gripping objects, reaching overhead, balancing, bending over, stooping, and climbing stairs. Tr. 62. Due to his medications, he had difficulty staying focused and remembering to complete tasks. Tr. 63.

Plaintiff stated that he lived in a tent for the last few months and would lie down in the tent without a mattress until it became hot, at which point he went to the store and sat down. Tr. 64-65. He carried jugs of water back to his tent from an irrigation system to wash and cook. Tr. 65. He said he received a $35,000 workers compensation settlement which he lived on until it ran out earlier in 2007, and he received medications through a program for indigent individuals. Tr. 52, 67.

## DISCUSSION

Plaintiff alleges that: (1) the ALJ erred in failing to give four different treating doctors' medical opinions controlling weight when they were well-supported by medically acceptable clinical

---

[4](...continued)
duplicated what was submitted in Plaintiff's subsequent disability application. It found that none of the additional materials provided a basis for changing the ALJ's decision. The Appeals Council specifically wrote that although Dr. Roush indicated Plaintiff was significantly limited shortly after surgery, Dr. Roush noted on August 4, 2008 that Plaintiff had significantly improved from his pre-operative status. The Appeals Council stated that although Plaintiff would likely have permanent residual deficits and would not be able to go back to his past relevant work, he could do some less strenuous activities. Tr. 3-7.

and laboratory diagnostic techniques and were not inconsistent with the other substantial evidence in the case record; and (2) the Commissioner erred in finding Plaintiff's testimony less than fully credible in that the severity and the extent of his symptoms is fully supported by the objective medical evidence of record. The Commissioner contends that substantial evidence supports the final decision that Plaintiff was not disabled within the meaning of the Social Security Act.

## A.  **Listings**

Plaintiff alleges that the he met or equaled the Listing at § 1.04(A) based on the opinions of his treating physicians (Drs. Gheraibeh, Rashkin, Forrest, and Roush) that he matched or equaled this Listing. He argues that these opinions should have been given controlling weight. The Commissioner contends that Plaintiff's spinal impairments did not meet or equal the criteria of Listing 1.04 so as to be presumptively disabling.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the impairment(s) is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). A claimant has to establish that there was a "twelve-month period...during which all of the criteria

in the Listing of Impairments [were] met." <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

Merely "coming close" to meeting a listing is not enough to establish equivalence, and a claimant cannot establish equivalence merely by showing that the overall functional impact of his combination of impairments was as severe as that of a listed (i.e. presumptively disabling) impairment. <u>See</u> <u>Zebley</u>, 493 U.S. at 531. Instead, the claimant must present medical findings equal in severity to every criterion in a listing. <u>See</u> <u>id.</u>

The Listing at § 1.04(A)[5] requires:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

As is discussed further below, a treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. <u>See</u> 20 C.F.R. § 416.927(d)(2). The opinions that Plaintiff met or equaled the §1.04(A) Listing, however, are opinions reserved to the Commissioner. The regulations do not require that the ALJ accept an opinion from a treating

---

[5]Plaintiff does not allege that he meets or equals the Listing at 1.04(B)(spinal arachnoiditis) or 1.04(C)(lumbar spinal stenosis resulting in pseudoclaudication).

physician when the physician opines on an issue reserved for the Commissioner. 20 C.F.R. § 404.1527(e). Specifically as to opinions on a plaintiff's residual functional capacity ("RFC"), the regulations provide that the ALJ shall use treating physicians' opinions on the nature and severity of an impairment, including a plaintiff's RFC, or whether an impairment meets or equals the requirements of a listing, but "the final responsibility for deciding these issues is reserved to the Commissioner," and the ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(2) and (3).

Here, the ALJ specifically considered the opinions of Dr. Rashkin and Gheraibeh (and implicitly considered the opinion of Dr. Forrest) that Plaintiff equaled the Listing. He discounted Dr. Rashkin's medical equivalence opinion, finding that it was not supported by Dr. Rashkin's clinical findings and other clinical findings of the record including Dr. Martinez's findings and opinion. Tr. 44-45. The ALJ gave limited weight to Dr. Gheraibeh's equivalence opinion because there were very few clinical findings in the record from this physician and his opinion was inconsistent with the findings of other physicians. Tr. 44.

Even taking all of these equivalence and matching opinions into consideration, Plaintiff fails to show that he met or equaled the § 1.04(A) Listing. First, Plaintiff has not shown that he had positive straight leg raise testing in the seated and supine positions.[6] Second, Drs. Rashkin and Forrest specifically opined that Plaintiff did not have other findings required by the Listing, including sensation or reflex loss, muscle weakness, and/or limitation of motion of the spine.

---

[6]There are some periodic positive straight leg test results, but it is unclear whether the results were positive in both the seated and supine positions as required by § 1.04(A), or that these findings were consistently positive for a period of at least twelve continuous months.

The ALJ's determination that Plaintiff did not meet of equal § 1.04 is also supported by the signed Disability Determination Transmittal forms (Tr. 71-72, 75-76) from the agency medical consultants (Drs. El-Ibiary and Cain) indicating they considered the question of medical equivalence, but found Plaintiff did not meet or equal one of the Listings.  See 20 C.F.R. § 404.1526 (The determination of whether a particular medical condition meets or equals a listed impairment is a medical judgment made at the initial and reconsideration stages of administrative review by the Commissioner's designated physicians and consultative medical specialists); SSR 96-6p (signature of a State agency medical consultant on the Disability Determination Transmittal form ensures consideration was given to whether a Listing is met or equaled).

### B.    RFC/Treating Physicians

Plaintiff also argues that two of his treating physicians, Dr. Rashkin and Dr. Rouse, opined that he had a RFC for less than the full range of sedentary work.  He argues that the ALJ erred at Step 5[7] of the sequential evaluation process by not giving these opinions controlling weight and in finding that he had the RFC for a full range of light work.  The Commissioner has not addressed this argument.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  See 20 C.F.R. § 416.927(d)(2); Mastro

_____

[7]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520.  The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy.  See id.

v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).  Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."  Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527.  Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion.  SSR 96-2p.

Review of the record indicates that although the ALJ addressed Dr. Rashkin's medical equivalence opinion, he did not discuss or consider Dr. Rashkin's Medical Source Statement opinion dated March 8, 2007 (Tr. 177-180).  In this statement, Dr. Rashkin opined, among other things, that Plaintiff had the RFC to lift less than ten pounds total and could stand/walk less than two hours in an eight-hour workday.  Such restrictions, if found to be credible, would preclude the performance of light work.[8]  Further, to the extent such an opinion was found to preclude the full range of activity

_____

[8]Light work activity involves lifting and carrying up to twenty pounds occasionally and ten pounds frequently with walking, standing, and sitting for six hours in an eight-hour day.  20 C.F.R. (continued...)

covered by a work category, the ALJ may not rely on the Grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant. See Hammond v. Heckler, 765 F.2d 424, 425-26 (4th Cir. 1985).

Dr. Roush's Medical Source statement, in which he opined, among other things, that Plaintiff could lift and carry less than ten pounds, could stand less than two hours in an eight-hour workday, and could sit less than six hours in an eight-hour workday, was not before the ALJ. The Appeals Council found these records were not material to the issue of whether Plaintiff was disabled prior to February 28, 2008 (the date of the ALJ's decision). Dr. Roush, however, began treating Plaintiff prior to that date (specifically performing surgery on January 15, 2008, see Tr. 920-923) and appears to have treated Plaintiff for continuing lower back problems. Upon remand, the ALJ should also consider the records and opinions of Dr. Roush.

**C.** **Credibility**

Plaintiff alleges that the ALJ erred in finding his testimony less than fully credible because the severity and extent of his symptoms is supported by the objective medical evidence of record. The Commissioner contends that substantial evidence supports the ALJ's determination that Plaintiff's subjective complaints of disabling limitations were not fully credible.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a claimant's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir.

---

[8](...continued)
§ 404.1567(b)

1996); <u>Mickles v. Shalala</u>, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). As the ALJ did not consider all of the medical evidence, including some opinions of Plaintiff's treating physicians, it is not possible at this time to determine whether a proper credibility determination was made.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to determine Plaintiff's RFC in light of all of the evidence (including the opinions of treating physicians Rashkin and Rouse), properly evaluate Plaintiff's credibility in light of all of the evidence, and continue the sequential evaluation process (including, if necessary, obtaining testimony from a vocational expert).

RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four

of 42 U.S.C. § 405(g) and 1383(c)(3) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

                                                  _____
                                                  Joseph R. McCrorey
                                                  United States Magistrate Judge

February 22, 2010
Columbia, South Carolina